### NEWTON v. WILLIAMS, Insurance Commissioner.
No. 68-4898.

Circuit Court, Orange County.

February 27, 1969.

Charles N. Prather, Executive Director, Legal Aid Society, Orange County Bar Association, for the plaintiff.

Robert J. Kelly, Tallahassee, and Stephen M. Slepin, Assistant Attorney General, for the defendant.

CLAUDE R. EDWARDS, Circuit Judge.

*Judgment for injunctive and declaratory relief:* On May 22, 1968 plaintiff was involved in an automobile accident. On August 12, 1968, defendant notified plaintiff that, because of her involvement in that accident, she would have her driver's license and/or motor vehicle tags and registration privileges suspended on September 16, 1968, unless she complied with the Financial Responsibility Law (Fla. Statutes, chapter 324).

Without prior hearing, plaintiff's privilege to operate a motor vehicle in Florida and her privilege of use of any motor vehicle owned by her were summarily suspended as of September 25, 1968 by defendant's order dated September 26, 1968. In this action,

filed October 25, 1968, plaintiff alleged, inter alia, facts indicating that because of her limited financial ability, she was and is unable to comply with chapter 324 in the procurement of insurance, posting of bond or cash or securities or becoming self-insured.

Plaintiff further alleged, inter alia, that she was denied a hearing in violation of both substantive and procedural due process; that she is deprived of her property right to own and beneficial use of her automobile and her privilege to drive without an opportunity first to be heard; that she has been denied a hearing upon the question of her culpabilities in connection with said accident; that she is being denied equal protection of the laws, contrary to the constitution of the state of Florida.

Plaintiff further alleges, in her amendment to the complaint, paragraph 16, that she does not fall within any of the exemptions enumerated in §324.051.

Thereafter, upon proper notice, argument was had before the court, both upon defendant's timely motion to dismiss, and upon the merits. Further memoranda of law were submitted, and the last was received on January 20, 1969.

Defendant's motion to dismiss, which was taken under advisement, is hereby denied.

The action of defendant in suspending the privileges of plaintiff, unquestionably arises under chapter 324 of the Florida Statutes. The purpose of chapter 324 is set out in §324.011. Pertinent portions thereof are set out verbatim below —

> "It is the intent of this chapter *** to promote safety, and *provide financial security by such owners and operators whose responsibility it is to recompense others* for injury to person or property caused by the operation of a motor vehicle, so it is required herein that the *owner and operator of a motor vehicle involved in an accident shall respond for such damages* and show proof of financial ability to respond for damages in future accidents as a requisite to his future exercise of such privileges." (Italics added.)

The plain, ordinary interpretation of the quoted portions of §324.011 is that it applies to "owners and operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle". Under our present statutes and law, it does not become the responsibility of an owner or operator to recompense others for injury to person or property caused by the operation of the motor vehicle unless it is proved

that — (a) the vehicle was negligently operated or maintained; (b) that such negligence was a lawful cause of the injury or damage; (c) that the person claiming injury or damages was not guilty of contributory negligence or assumption of risk (assuming (c) is properly pled by the person sought to be charged).

This plain meaning of §324.011 is reiterated in the last few lines thereof where it is provided that the owner and operator shall "respond for such damages". The word "such" obviously refers to "owners and operators whose responsibility it is to recompense others for injury to person or property".

This court or any other person of ordinary intelligence and education could arrive at the same result by a careful reading of the plain language of §324.011. Further dignity to this interpretation is lent by Mr. Justice Roberts in his opinion in Bankers & Shippers Ins. Co. v. Phoenix Assurance Co., 210 So.2d 715, 718, syllabus [2], where he says —

> "The Act does not contemplate or require compliance with the Act by an owner or operator of a motor vehicle, *so long as he has never had an accident resulting in injuries for which such owner or operator is legally responsible ***".* (Italics added.)

On the other hand, contrary to the intent and purpose of the Act, which is to require that a previously uninsured motorist must provide financial responsibility *after an accident for which he is responsible,* the Act requires, in §324.051(2)(a), that the defendant (state treasurer as ex-officio insurance commissioner) suspend the license of any motorist who was "uninsured" at the time of an accident, *** "unless such operator or owner shall prior to the expiration of such thirty days be found by the commissioner to be exempt from the operation of the chapter *based upon evidence in his files satisfactory to him,* etc. ***". (Italics added.)

The grounds which the commissioner is allowed to use in finding the motorist exempt from the Act do not include any determination of whether or not the owner or operator is one "whose responsibility it is to recompense others for injury to person or property," etc. The defendant, in his brief, is quick to point out that adjudication of a licensee's liability or legal responsibility is reserved by §324.051(2)(b), Florida Statutes, by rule 5-13.04 promulgated by the commissioner, and by articles II and V of the constitution of Florida (1885). Defendant's argument, in summary, is that only the courts can finally determine whether or not the owner or operator is one "whose responsibility it is to recompense others for injury to person or property". Thus, defendant argues, the commissioner could not

possibly be empowered or required to make such a determination under the Act or without violation of articles II and V of the constitution.

Nevertheless, the commissioner is empowered under §324.051(2) (a) "based upon evidence in his files satisfactory to him" to make the legal determination — *for the purpose of the Act only* — that "no injury was caused to the person or property of anyone other than such operator or owner". If he so determines, the "uninsured" motorist is exempt from the provision of the Act (unless or until a court decides otherwise — §324.121(1)). It is hardly necessary to observe that it is the courts of this state which ultimately determine whether "no injury was caused to the person or property of anyone other than such operator or owner".

A second example of an "unconstitutional judicial determination" by the commissioner is found in §324.051(b)(1) which provides that "this subsection [(2)] shall not apply — 1. To such operator or owner if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident". Again, the statute allows and requires the commissioner to make a legal decision — for the purposes of the Act only — concerning the existence of liability insurance covering the vehicle involved. The Bankers & Shippers Ins. Co. case, supra, demonstrates that the final, binding determination of this question rests with the courts. Therefore, if, for the purpose of invoking the Act, the commissioner can decide whether or not injury was caused to some person other than the operator or owner sought to be charged, or, for the same purposes, he can determine that there was not a proper automobile liability policy covering the vehicle involved, he can certainly determine, *for the purposes of the Act,* whether or not the person sought to be charged is one "whose responsibility it is to recompense others for injury to person or property". To allow the commissioner to suspend driving privileges without making such a determination for his purposes only, does violence to the plain language of the intent of the statute. See also Bankers & Shippers Ins. Co., supra.

To carry this matter one step further, without precise regard to the language in §324.011, the provisions of §324.051 are unconstitutional in that the classification of persons subject to the Act bears no reasonable relation to the broad subject matter of the legislation. §324.051 puts the non-negligent, non-liable, "uninsured" motorist or owner in the same category with the negligent, liable, "uninsured" operator or owner. Such a classification cannot reasonably be said to promote safety or to provide financial security for those entitled to be recompensed by negligent owners or operators. The

fact that a non-negligent "uninsured" motorist is struck from behind while lawfully proceeding down the street by a negligent motorist has no more relation to the promotion of safety or the need for the non-negligent "uninsured" motorist to supply evidence of financial responsibility than does the fact that the non-negligent, "uninsured" motorist got out of bed in the morning on which he was wrongfully struck from behind.

The case of Wilson v. Pest Control Commission, 199 So.2d. 777, 780, syllabus [7, 8], makes it clear that the intention of §§120.22 and 120.23, Florida Statutes — "was to guarantee to any party affected by agency action a hearing before any of the parties' rights, privileges or immunities were affected, not afterwards".

The defendant contends that the plaintiff has failed to exhaust or avail herself of administrative remedies as demonstrated above. The administrative remedies allowed and provided by the Act are contrary to the intent of the statute and unconstitutionally deny the defendant the equal protection of the law. See article I, §1, Constitution of 1885, (in effect at the time of the suspension, and at the time suit was brought), and see also article I, §2, Constitution of 1968.

Defendant insists that a "stay" of the action of suspension or revocation is untimely and improper. Suffice it to say that no other adequate remedy has been suggested to this court. This action is brought in forma pauperis.

Therefore, it is ordered and adjudged that —

(1) Plaintiff's driver's license and registration plates and privilege of ownership and operation of motor vehicles be restored to her forthwith and not more than five days from the receipt of a copy of this judgment by the commissioner.

(2) That a hearing be held by the commissioner upon proper notice in accord with §§120.22 and 120.23, Florida Statutes, to determine administratively whether or not plaintiff is a person "whose responsibility it is to recompense others for injury to person or property" caused by the operation of her motor vehicle on May 22, 1968. If it is determined that she is not such a person, the restoration required in (1) above shall be for the indefinite future. Should she be determined to be such a person, consistent with the provisions of this judgment, she shall forthwith, and not more than five days from the receipt of the decision of the commissioner by her, deliver up her registration plate and driver's license to the commissioner upon his order of suspension.

(3) Nothing herein contained shall limit or restrict the right of plaintiff to seek judicial review of the acts of the commissioner. Paragraph (2) of this judgment requiring the surrender by plaintiff of her plates, license and privileges under certain events, shall, of course, be inapplicable if she should qualify under chapter 324 either by furnishing statutory proof of financial responsibility or by being finally adjudicated not to be liable by a court of competent jurisdiction.

(4) The costs of this action are to be borne by the defendant and paid into the general fund of Orange County, or as this court may, by appropriate order, direct.