613 So.2d 466 (1993)
James GRANT, et al., Plaintiffs-Appellants,
v.
NEW HAMPSHIRE INSURANCE CO., Defendant-Appellee.
No. 79398.
Supreme Court of Florida.
February 11, 1993.
David J. Beasley, Gordon J. Evans and Roderick L. McGee of Ligman, Martin & *467 Evans, Coral Gables, for plaintiffs-appellants.
G. William Bissett of Hardy & Bissett, P.A., Miami, for defendant-appellee.
KOGAN, Justice.
This case is before us on three questions of Florida law certified by the United States Court of Appeals for the Eleventh Circuit. Grant v. New Hampshire Insurance Co., No. 91-5255 (11th Cir. Feb. 10, 1992). We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution.
The following recitation of the undisputed facts as set forth by the Circuit Court of Appeals is necessary to place the certified questions that follow in context. In April 1988, appellant James Grant, a resident of the United Kingdom, purchased a "U.S.A. Travel Excess Non-Owner Policy," from appellee New Hampshire Insurance Company. The policy provided Grant with excess insurance coverage up to $500,000. Paragraph 3 of the "Conditions" section of the policy provides that
the total limit of [New Hampshire's] liability for all damages ... shall be only for the ultimate net loss in excess of the amount recoverable under the underlying insurance as set out in the rental or leasing contract, but in no event shall the company be held liable for amounts less than $100,000 per person, $300,000 per accident for Bodily Injury Liability and $25,000 for Property Damage Liability.
Paragraph 13 of the Conditions section (hereinafter the "conformity clause") reads as follows:
TERMS OF POLICY CONFORMED TO STATUTE: If under the provisions of the motor vehicle financial responsibility law, "no-fault" law, or any similar law of any governmental jurisdiction within the territorial limits of this policy, a nonresident is required to maintain certain insurance and such insurance requirements are greater than the insurance provided by this policy, the limits of the company's liability and the kinds of coverages afforded by this policy shall be as set forth in such law in lieu of the insurance otherwise provided by this policy, but only to the extent required by such law, and only with respect to the operation or use of a motor vehicle in such jurisdiction; provided, that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other vehicle liability insurance policy.
At the time the New Hampshire policy was issued, Grant was not covered by a personal automobile liability policy or by any other liability policy.
In late April 1988, while the New Hampshire policy was in effect, Grant entered into a car rental agreement with appellant Lindo's Rent-A-Car. The rental agreement contains the following provision invoking section 627.7263, Florida Statutes:[1]
NOTICE: SECTION 627.7263 OF THE FLORIDA STATUTES (1979) PROVIDES LIABILITY INSURANCE OR PERSONAL INJURY PROTECTION INSURANCE PROVIDING COVERAGE FOR THE LESSOR OF A MOTOR VEHICLE FOR RENT OR LEASE SHALL BE PRIMARY UNLESS OTHERWISE STATED IN BOLD TYPE ON THE FACE OF THE RENTAL OR LEASE AGREEMENT. ACCORDINGLY, YOU ARE HEREBY NOTIFIED THAT LESSOR IS ELECTING, IN ACCORDANCE WITH THE AFORESAID *468 STATUTE, TO MAKE YOUR PERSONAL AUTOMOBILE INSURANCE CARRIER PRIMARILY RESPONSIBLE FOR ANY AND ALL CLAIMS ARISING OUT OF YOUR USE AND OPERATION OF THIS RENTAL VEHICLE. THEREFORE, PLEASE ENTER THE NAME OF YOUR PERSONAL AUTOMOBILE INSURANCE COMPANY ON THE LINE PROVIDED BELOW:
Ins. Co. ______ Pol. # ______[2]
Paragraph 7 on the reverse side of the rental agreement states that the renter
shall be insured under Lessor's automobile liability insurance only if Renter has no other automobile liability insurance available to Renter with respect to Renter's use of the Vehicle. Renter hereby acknowledges that Lessor's property damage/liability insurance does not provide uninsured motorist coverage and Renter hereby rejects such coverage to the extent permitted by law.
While operating the rental vehicle, Grant was involved in an automobile accident. The driver of the other car sued Grant, Lindo's and H.R. Bentley, the title owner of the rented car, seeking damages for personal injuries sustained as a result of the accident. Grant made demand on New Hampshire to defend him. Lindo's made demand on New Hampshire to assume the primary layer of insurance coverage. When the demands were refused, Grant and Lindo's filed a declaratory action against New Hampshire in federal district court. Grant and Lindo's claimed that the rental agreement, which incorporated section 627.7263, and the New Hampshire policy, which contained the aforementioned conformity clause, obligated New Hampshire to defend Grant and Lindo's in the personal injury action and to provide primary insurance coverage as to that lawsuit. Grant and Lindo's also sought costs and attorney's fees incurred in defending the lawsuit as well as costs and fees incurred in bringing the declaratory action.
New Hampshire moved for dismissal for failure to state a claim, arguing that section 627.7263 only applies to primary insurance and does not require an excess insurer to "drop down" to become a primary insurer in the absence of primary coverage. New Hampshire further argued that the conformity clause contained in the policy did not convert the policy into one offering primary coverage because Florida law does not require a nonresident to "maintain certain insurance" with respect to a rental car operated in Florida. Finally, New Hampshire claimed that even if it were liable to Grant for defense and indemnification, it owed no such duty to Lindo's because Lindo's was not an insured under the policy.
The district court granted the motion to dismiss, holding that because New Hampshire was not Grant's primary insurance carrier and because under Florida law an excess carrier does not drop down to become a primary carrier, the provisions of section 627.7263 do not apply in this case. The district court further reasoned that Florida law does not require a nonresident to "maintain certain insurance" with respect to the operation of a rental car in Florida. Therefore, the conformity clause of the New Hampshire policy was not triggered. In light of these rulings, the district court did not reach the issue of whether New Hampshire owed a duty of defense or indemnification to Lindo's.
On appeal to the Eleventh Circuit, Grant and Lindo's maintain that section 627.7263 applies to excess insurers where no primary insurance is available. They also contend that the Florida financial responsibility law requires operators of motor vehicles registered in Florida to maintain liability insurance up to $10,000, thereby transforming the New Hampshire policy into a primary policy by operation of the conformity clause.
Finding no controlling precedent from this Court the Eleventh Circuit certified the following questions:

*469 (I) DOES THE CONFORMITY CLAUSE [PARAGRAPH 13] IN NEW HAMPSHIRE'S EXCESS INSURANCE POLICY SERVE TO EXTEND THE COVERAGE PROVIDED BY THAT POLICY TO MEET THE REQUIREMENTS OF FLORIDA'S FINANCIAL RESPONSIBILITY LAW, NOTWITHSTANDING THAT THE LAW ON ITS FACE DOES NOT REQUIRE AN OWNER/OPERATOR OF A FLORIDA-REGISTERED VEHICLE TO MAINTAIN INSURANCE UNTIL AFTER HE HAS BEEN INVOLVED IN ONE ACCIDENT RESULTING IN INJURIES FOR WHICH HE IS LIABLE?
(II) DOES AN EXCESS INSURER, IN THE ABSENCE OF ANY PRIMARY INSURANCE, OWE A PRIMARY DUTY OF DEFENSE AND INDEMNIFICATION TO ITS INSURED UNDER FLA. STATUTES SECTION 627.7263, WHERE THAT [STATUTORY] SECTION HAS BEEN PROPERLY INVOKED BY THE LESSOR OF A FLORIDA REGISTERED VEHICLE?
(III) ASSUMING THAT NEW HAMPSHIRE OWES A DUTY OF DEFENSE AND INDEMNIFICATION TO ITS INSURED, GRANT, DOES NEW HAMPSHIRE OWE LINDO'S, A NON INSURED UNDER THE POLICY, ANY DUTY OF DEFENSE AND/OR INDEMNIFICATION?
Grant, slip op. at 9 (11th Cir. Feb. 10, 1992). We answer the first two questions in the negative, and therefore do not reach the third.
In Bankers & Shippers Insurance Co. v. Phoenix Assurance Co., 210 So.2d 715, 718 (Fla. 1968), we explained that Chapter 324, Florida's Financial Responsibility Law, "does not contemplate or require compliance with the Act by an owner or operator of a motor vehicle, so long as he has never had an accident resulting in injuries for which such owner or operator is legally responsible." See also Lynch-Davidson Motors v. Griffin, 182 So.2d 7, 8 (Fla. 1966) (the compulsions of Florida's Financial Responsibility Law are not invoked unless and until the owner or operator is involved in an accident).
In Bankers & Shippers Insurance Co., we went on to explain that the parties to a contract of automobile liability insurance
may agree that the insurance coverage provided by the policy shall comply with the requirements of a financial responsibility law, in any state in which the coverage provided by the policy should accrue; and full effect will be given to such a "conformity clause" in any accident, including the first. On the other hand, the conformity clause agreed upon by the parties may relate to and provide only for certification of the policy as proof of financial responsibility for the future under the provisions of a state's financial responsibility law. Under such a conformity clause, the fact that the insured relies upon the policy as coverage for his liability for and to avoid the sanctions of the Act in his first accident does not have the effect of "conforming" such policy to and reading into it all the requirements of the Act, as to such first accident. As noted above, the Act does not require an owner or operator of a motor vehicle to make sure that he can respond in damages, within the limits of the Act, for injuries resulting from his first accident. To hold that a "conformity clause" relating only to future accidents operates to conform an insurance policy to all the requirements of the Act as to a first accident, merely by being relied upon by the insured for coverage in such first accident, would be contrary to the spirit and intent of the Act and would, as well, allow the insured to vary the terms of his contract with the insurer, in violation of well settled principles of law.
210 So.2d at 719 (citations omitted).
Paragraph 13 of the New Hampshire policy provides in pertinent part that
If under the provisions of the motor vehicle financial responsibility law ... or any similar law... a non-resident is required to maintain certain insurance and such insurance requirements are greater than the insurance provided *470 by this policy, the limits of the company's liability... shall be as set forth in such law in lieu of the insurance otherwise provided by this policy.
As we read the provision, it would conform the policy to the requirements of Florida's Financial Responsibility Law if Grant "is required to maintain certain insurance" under that law.
The purpose of Florida's Financial Responsibility Law, as stated in section 324.011, Florida Statutes (1987), is to require
the operator of a motor vehicle involved in an accident or convicted of certain traffic offenses meeting the operative provisions of s.324.051(2) [to] respond for such damages and show proof of financial ability to respond for damages in future accidents as a requisite to his future exercise of such privileges.
Section 324.151(2), Florida Statutes (1987), provides:
The provisions of [section 324.151, dealing with owner or operator's motor vehicle liability policies as proof of financial responsibility] shall not be applicable to any automobile liability policy unless and until it is furnished as proof of financial responsibility for the future pursuant to s.324.031, and then only from and after the date said policy is so furnished.
It is apparent from these provisions and our decision in Bankers & Shippers Insurance Co. that the operator of a motor vehicle is not required to maintain certain insurance under Chapter 324 until the operator is involved in an accident or is convicted of certain traffic offenses.
The appellants concede that this "`one accident' rule is still law as to personally owned vehicles." However, they maintain that by operation of section 627.7263 Grant, as the operator of a leased vehicle, was required to comply with the requirements of section 324.021(7), Florida Statutes (1987).[3] Therefore, paragraph 13 of the policy served to conform the coverage to these requirements. We cannot agree.
Subsection (1) of section 627.7263, Florida Statutes (1987), provides in relevant part that the insurance policy providing liability coverage for the lessor of a motor vehicle is primary for the limits of liability required by section 324.021(7) unless otherwise stated in bold type on the face of the rental or lease agreement. Subsection (2) of the statute provides that each rental or lease agreement shall contain a provision in bold type on the face of the agreement informing the lessee of the provisions of subsection (1) and shall provide a space for the name of the lessee's insurance company if the lessor's insurance is not to be primary. We do not read this statute to require the lessee of a motor vehicle to comply with the requirements of section 324.021(7). Section 627.7263 merely allows the lessor of a Florida-registered motor vehicle to shift the burden of providing primary liability coverage to the lessee's insurance carrier when the lessee in fact has a primary liability insurance carrier.
The fact that a lessee may not have a primary automobile liability policy is recognized and provided for in paragraph 7 of the rental agreement which provides that the
Renter shall be insured under [Lindo's] automobile liability insurance policy only if Renter has no other automobile liability insurance available to Renter with respect to Renter's use of the Vehicle.
As noted by the federal district court in this case, New Hampshire is not Grant's primary automobile insurance carrier. The New Hampshire policy is
a limited policy designed to cover Grant for only "excess" coverage referred to as "umbrella" coverage. Umbrella policies take effect only after all underlying primary coverage have (sic) been exhausted because "umbrella coverages ... are regarded *471 as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." Allstate Insurance Co. v. Executive Car and Truck Leasing, Inc., 494 So.2d 487, 489 (Fla. 1986), quoting Appleman, Insurance Law and Practice § 4909.85 (1981).
Grant v. New Hampshire Insurance Co., No. 90-8059-Civ (S.D.Fla. Feb. 27, 1991). Accordingly, because Grant was not "required to maintain certain insurance," under Florida's Financial Responsibility Law,[4] paragraph 13 of the New Hampshire policy does not extend the coverage provided by the policy to conform with the requirements of that law.
Finally, in answer to the second question, where the lessee of a motor vehicle has true excess liability coverage, such as the umbrella coverage in this case, but no primary coverage, section 627.7263 does not require the excess insurer to "drop down" into the shoes of a primary carrier to provide a defense and indemnification to its insured. As noted above, that provision simply allows the lessor of a motor vehicle to shift the burden of providing primary liability coverage from its carrier to the lessee's insurance carrier when the lessee has a primary carrier. Section 627.7263 does not authorize an insured to unilaterally convert an insurance policy providing umbrella liability coverage into one providing primary coverage simply by entering into a car rental agreement that purports to shift primary liability to the lessee's automobile insurance carrier. See Bankers & Shippers Ins. Co., 210 So.2d at 719 (an insured may not unilaterally vary the terms of a contract of insurance); Southeastern Fidelity Ins. Co. v. Cole, 493 So.2d 445, 447 (Fla. 1986) (a provision in a rental agreement cannot be relied upon to alter the provisions of an insurance policy).
Having answered the first two certified questions in the negative, we return the cause to the United States Court of Appeals for the Eleventh Circuit for disposition.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
NOTES
[1] Section 627.7263, Florida Statutes (1987), provides:

(1) The valid and collectible liability insurance or personal injury protection insurance providing coverage for the lessor of a motor vehicle for rent or lease shall be primary unless otherwise stated in bold type on the face of the rental or lease agreement. Such insurance shall be primary for the limits of liability and personal injury protection coverage as required by ss. 324.021(7) and 627.736.
(2) Each rental or lease agreement between the lessee and the lessor shall contain a provision on the face of the agreement, stated in bold type, informing the lessee of the provisions of subsection (1) and shall provide a space for the name of the lessee's insurance company if the lessor's insurance is not to be primary.
[2] No insurance company name or policy number was written in these blanks.
[3] Section 324.021(7), Florida Statutes (1987), defines "Proof of Financial Responsibility" as, in pertinent part:

That proof of ability to respond in damages for liability on account of accidents arising out of the use of a motor vehicle:
(a) In the amount of $10,000 because of bodily injury to, or death of, one person in any one accident.
[4] The appellants also cite to "section 324.022, Florida Statutes, (1986)" to support their contention that as an operator of a motor vehicle registered in Florida Grant was required to maintain liability insurance up to $10,000. However, section 324.022, Florida Statutes (Supp. 1988), which addresses financial responsibility for property damage, did not become effective until October 1, 1989. Ch. 88-370, § 8, Laws of Fla. All relevant events in this case occurred in April 1988, prior to the effective date of this statute. Therefore, the provision may not be relied upon to determine New Hampshire's obligations under the policy.